Matter of JOHN ARMSTRONG CHANLER, Now Known as JOHN ARMSTRONG CHALONER, an Alleged Incompetent.

(Supreme Court, New York Special Term, August, 1919.)

Incompetent persons — when motion to discharge committee of person and property granted.

Where two years after petitioner had been duly committed to an asyslum for the insane in this state, and as a result of a proceeding instituted by two of his brothers a committee of his person and property was appointed, and it appears that for upwards of seventeen years since he was judicially declared competent in a sister state to which he had gone after his escape from the asylum he had lived a sane and well-ordered life in the enjoyment of social, religious and public esteem and honor outside of the state of New York, a motion to discharge the committee of his person and property will be granted.

APPLICATION for the discharge of a committee of the person and property of petitioner.

Kaplan, Kosman & Streusand and Frederick A. Ware (Howard Taylor, of counsel), for petitioner.

Morris & McVeigh (Charles S. McVeigh, of counsel), for Elizabeth Winthrop Chapman, Winthrop Astor

28

Chanler, Lewis Stuyvesant Chanler, Margaret Livingston Aldrich, William Astor Chanler and Alida Beekman Emmet, appearing but not opposing.

Evarts, Choate, Sherman & Leon (Herbert J. Bickford, of counsel), for committee, Thomas T. Sherman.

FORD, J.  Application is made here for the discharge of a committee of the person and property of the petitioner, who was adjudged insane and committed to the Bloomingdale Insane Asylum in 1897.  In 1899, as a result of a proceeding instituted by two of his brothers, a committee of his person and property was appointed, whose successor still holds the property under the order then made by this court.  The alleged incompetent did not appear personally or by attorney at the hearing because of illness.  The petition does not make clear just how he got out of the asylum, but it was stated on the argument, and is undoubtedly the fact, that he escaped in 1900.  According to the petition he was a legal resident of Virginia in 1897, and in 1901 a competent court of that state duly declared him to be sane and capable of taking care of himself and his estate.  That adjudication also still stands.  His name was legally changed from Chanler to Chaloner by court proceedings in North Carolina.  This application is made under section 2343 of the Code of Civil Procedure, which reads:  " Property, when to be restored.  Where a person with respect to whom a committee is appointed, as prescribed in this title, becomes competent to manage himself or his affairs, the court must make an order, discharging the committee of his property, or the committee of his person, or both, as the case requires, and requiring the former committee to restore to him the property, remaining in the committee's hands.  Thereupon the

property must be restored accordingly.'' That statute is the sole repository of authority for granting the relief sought by the petitioner. It is as broad and comprehensive as it is clear and precise. The procedure under it has been thus established by the Court of Appeals in *Matter of Blewitt,* 138 N. Y. 148: '' Section 2343 of the Code provides that where the alleged lunatic becomes competent to manage himself and his affairs, the court must make an order terminating the committee of his person and property. When an application is made for a *supersedeas* of the commission, the court must exercise its discretion. The presiding judge may cause the lunatic to be brought before him for his personal examination. He may appoint an expert to examine him and report as to his condition. He may cause the witnesses to be brought before him, and examined in open court, or he may refer the matter to a referee to take the evidence of the witnesses, and make his report thereon; or he may hear the application upon affidavits if he is satisfied to dispose of it that way. He may also, in the exercise of his discretion, although we have found no reported case in this country or England where it was done, order the question as to the sanity of the alleged lunatic to be tried before a jury. But the manner in which he will ascertain whether the alleged lunatic has become sane and competent to take care of himself and his property rests in his discretion. *In re Hanks,* 3 Johns. Ch. 568; *In re Weis,* 16 N. J. Eq. R. 318. The discretion should be exercised with great care and patience, so as to protect the alleged lunatic against the wrongful deprivation of his liberty and property.'' Thus it is seen that very wide discretion is lodged in the court as to what proofs it may require to satisfy itself that the petitioner is '' competent to manage himself or his affairs.'' There is no

opposition to the petition, although all the brothers and sisters, his only next of kin, and the committee, had due notice. Some of the relatives appeared by attorney upon the hearing. Also, a letter written, addressed to the petitioner by a sister, was read, which, as I gathered, may safely be taken as a true index of the attitude of all the relatives in respect of the application. It says: "June 9, 1919. Sylvania, Tarrytown-on-Hudson. Dearest Archie: I know that I speak for all your brothers and sisters when I tell you that they will do nothing to obstruct any steps that you may take to recover complete control of your rights and property, nor do anything to interfere with your personal freedom. Indeed, it has been for many years their wish that you should be re-established in your personal freedom and property rights. Your affectionate sister, Elizabeth." The committee appeared by his attorney, who lightened the labors of the court by a clear exposition of the law governing the application, and collated in a concise and trenchant brief the salient features of the history of the case, covering a period of some twenty-two years. It appears from the petition which stands uncontradicted, that since the Virginia court adjudged him sane and competent to manage his affairs the petitioner has resided in that state and in North Carolina, maintaining a country residence in the former, but having his legal residence in the latter state since 1905. In both states he has properties, which he has managed successfully and methodically. He is himself a member of the Bar of this state, and has taken an active part in litigation in which he has been involved. He was graduated from Columbia University, from which he took the degrees of Bachelor of Arts and Master of Arts, and has studied in three institutions of learning in France. He is recognized by his friends, neighbors

and acquaintances as a distinguished and useful member of the community in which he lives. He has been a vestryman, and is now a trustee of his church, and is a member in several of the larger and well-known fraternal organizations. In two libel suits brought by himself as plaintiff against different newspapers he obtained large verdicts. One of these cases was tried recently in this state in a federal court, and in that case the mental condition of the petitioner was submitted for the consideration of the jury and passed upon favorably to him, as was plainly indicated by the excessively large verdict rendered in his favor by twelve men, who for two days had been watching him in the witness chair and listening to his testimony. Thus, for upwards of seventeen years since he was judicially declared competent in a sister state we find the petitioner living a sane and well-ordered life in the enjoyment of social, religious and public esteem and honor outside of New York. What more proof is needed of his competency to manage himself and his affairs in this state also? What need is there for referees, experts or juries? Why should he be subjected to further harassment? The injunction of the Court of Appeals (*supra*) I have kept in mind and heeded, to "proceed with great care and patience so as *to protect the alleged lunatic* against the wrongful deprivation of his liberty and property," and in obedience to that injunction I declare this petitioner to be sane and competent to manage himself, his property and his affairs, and entitled to go forth and mingle with his fellowmen freed from the incubus which he has borne these many years. The prayer of the petitioner is granted.

Motion granted.